Lincoln Law, LLP
Carl R. Gustafson, Bar No. 254881
Tessa Meyer Santiago, UT Bar No. 09324, pro hac vice
Attorneys for Defendant
1525 Contra Costa Blvd.
Pleasant Hill, CA 94523
Telephone: (800) 722-6578
Facsimile: (800) 584-6826

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | ) BANKRUPTCY CASE NO.: 10-71788 |
| | ) |
| Jesus Edgar Montano, | ) Chapter 7 |
| | ) |
| Debtor | ) ADVERSARY CASE NO.: 11-04008 WJL |
| _____ | ) |
| | ) **DEFENDANT'S MEMORANDUM IN SUPPORT** |
| | ) **OF MOTION FOR CONTEMPT AND** |
| HERITAGE PACIFIC FINANCIAL, LLC, a | ) **SANCTIONS** |
| Texas Limited Liability Company | ) |
| | ) **Hearing Date:** November 20, 2013 |
| Plaintiff, | ) **Time:** 10:30 a.m. |
| | ) **Room:** 220 |
| v. | ) **Place:** 1300 Clay St., 2nd Fl. |
| | ) Oakland, CA 94612 |
| JESUS EDGAR MONTANO | ) |
| | ) Before Honorable Judge William J. Lafferty |
| Defendant | ) |
| _____ | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

    Defendant files this memorandum in support of his motion, brought pursuant to Bankr. R. Proc. 9020 and 9014, 11 U.S.C §105, and Bankr. R. Proc. 7037, for an order finding Plaintiff and Judgment Debtor Heritage Pacific Financial ("HPF") and its owners and managers, Ben Ganter and Christopher Ganter, in contempt of the Order on Defendant

Case: 11-04008   Doc# 248   Filed: 10/21/13   Entered: 10/21/13 22:13:38   Page 1 of 23

Jesus Montano's Motion for Assignment of Rights pursuant to CCP§708.510(a) and

FRCP 69(a) ("the Assignment Order"), entered July 16, 2013, in contempt of the Order on

Defendant's Motion to Compel Plaintiff's Response to Rule 69 Post-Judgment

Interrogatories ("Compel Order"), entered September 13, 2013, and in violation of the

responsibilities of parties under Bankruptcy Rules 7037.

Defendant requests the Court sanction HPF and its owners and managers to the

furthest reach of the Court's contempt and sanctions powers, including sanctions to

compensate Defendant for the damages sustained through Plaintiff's willful contempt of

the Assignment Order, coercive sanctions to ensure HPF's compliance with the

Assignment Order for all other settling debtors, and continuing financial sanctions

imposed for each day the parties sanctioned remain in contempt. Defendant also seeks fees

incurred in the bringing of this motion.

## I. RELEVANT LEGAL STANDARDS

Bankruptcy courts have the power to enter civil contempt orders, and impose civil

contempt sanctions. Bankruptcy courts also have the power to sanction parties and non-

parties for their contemptuous actions. *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052,

1058 (9th Cir. 2009); *Oliner v. Kontrabecki (In re Kontrabecki)*, 305 B.R. 510 (N.D. Cal.

2004); *In re Chief Executive Officers Clubs*, 359 B.R. 527, 534 (Bankr. S.D. N.Y 2007).

Bankruptcy courts may incarcerate contemnors who fail to pay court-imposed fines or

otherwise comply with court order's. *In re Spanish Plaza Realty Co.*, 155 B.R. 249

(Bankr. S. D. Fla. 1993); *In re Duggan*, 133 B.R. 671 (Bankr. D. Mass. 1991); *In re Krisle*, 54 B.R. 330, 338 (Bankr. D.S.D. 1985)(incarceration ordered in civil contempt

proceedings where debtor wrongfully withdrew cash collateral from debtor-in-possession

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

2

account and failed to comply with court order requiring turnover of cash proceeds wrongfully withdrawn).

### A. Civil Contempt

In order for the Court to hold Heritage Pacific Financial in civil contempt of court, Defendant must establish three elements: 1) the court order was in effect and known to the party, 2) the order's terms are clear and unambiguous, 3) the proof of the violation is clear and convincing.. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003), *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 264 (5th cir. 2009. The standard for proof is clear and convincing, in other words, Defendant must present "a quantum of proof adequate to demonstrate to a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d. Cir. 2002)(citation omitted).

### B. Sanctions

Bankruptcy courts have the inherent authority to impose sanctions for bad-faith conduct. This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO*, 501 U.S. 32, 44 (1991) (quoting *Link v. Wabash*); Local Rule 9011-1 ("Failure of counsel or of a party to comply with any provision of these rules or the Bankruptcy Rules shall be grounds for imposition by the Court of appropriate sanctions.") In order for the Court to sanction Heritage Pacific Financial, Defendant must establish that HPF acted in "bad faith" and that it engaged in "willful misconduct." *In re Lehtinen*, at 1058. The Court may sanction HPF for "a broad range" of conduct, including engaging in "improper litigation tactics." *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

Case: 11-04008   Doc# 248   Filed: 10/21/13   Entered: 10/21/13 22:13:38   Page 3 of 23

Additionally, sanctions under Rule 7037 may be imposed upon "a party or party's officer, director or managing agent" for failure to obey an discovery order issued under Rule 37(a). Bankr. R. Proc. 7037(b)(2). Failure to comply with an order issued under 7037(a) may treated as contempt of court. Bankr. R. Proc. 7037(b)(2)(A)(vii).

## II. FACTUAL BASIS FOR MOTION

On January 25, 2013, this Court entered an order awarding attorneys fees to Defendant Jesus Montano. *See* Docket Item No. 198.

### A. Assignment Order

On July 16, 2013, after due notice and a hearing, this Court entered the Order assigning all rights, accounts, accounts receivables, rights to payment of money, and general intangibles owed and in favor of Heritage Pacific Financial, LLC due from over forty settling defendants, identified by name and case number, to Jesus Montano until the satisfaction of the judgment. In particular, the Order assigned any monies owed by Rodulfo Palacio, defendant in Heritage *Pacific Financial, LLC v. Palacio*, Case No. 8:11-AP-01022, Bankr. C.D. Cal. to Mr. Montano until satisfaction of the judgment. *See Assignment Order*, Docket Item No. 233, at page 5, line 16, a copy of which is attached as *Exhibit A* to this memorandum.

The Order also enjoined Heritage Pacific Financial from "assigning or otherwise disposing of the right to payment assigned by this order, except upon a showing of need." *Exh. A,* at page 9, lines 8-11.

The Order required Heritage Pacific to forward any funds acquired by the parties covered in the Order to Lincoln Law. *See Exh. A*, at page 8, lines 8-18.

The Order remains in effect until the fees awarded at paid in full. *See id.*

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

4

Defendant received the Order. On July 18, 2013, the Court sent notice of the Order to HPF's attorney of record, Brad Mokri, via ECF, and to HPF, via US mail, at 2200 K. Avenue, Plano, Texas, 75074. *See BNC—Certificate of Notice*, docket item no. 234, attached as *Exhibit B* to this memorandum. The Order was not returned to the Court as undeliverable. Declaration of Tessa Meyer Santiago (hereinafter "Santiago Dec."), submitted in support of this Motion for Contempt and for Sanctions, at ¶2.

<u>Rudolfo Palacio and Knightshead Trust</u>

In order to provide notice of the Order to the affected parties, Lincoln Law sent letters to all the settling debtors and their attorneys covered in the Order. The letters provided the settling debtors and their attorneys with a copy of the Order, and a cover letter explaining the Order. This mailing was sent out via first class U.S mail on or around July 22, 2013. In this mailing was a letter and Order addressed to Mr. Rudolfo Palacio, 26762 Carlota Drive, Mission Viejo, CA 92691. In this mailing was also a letter and Order addressed to Gerald L. Bohart, 9988 Hibert Street, Suite 208, San Diego, California 92131. He is Mr. Palacio's attorney of record. *See* Santiago Decl. ¶3; Declaration of Melinda Mulkey ("Mulkey Decl.") ¶¶3, 5.

On October 4, 2013, Defendant's counsel, Ms. Santiago received a transcribed phone message from Melinda Mulkey, legal assistant to attorney Gerald Bohart. In the message, Ms. Mulkey indicated that Mr. Bohart represented a client in the Heritage Pacific Financial matter. The clients had contacted their office, confused between all the letters they had received in the last 2 months regarding where payments were supposed to be sent. Ms. Mulkey requested a return phone call to clarify where the payments were

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

Case: 11-04008   Doc# 248   Filed: 10/21/13   Entered: 10/21/13 22:13:38   Page 5 of 23

supposed to be sent. *See* Phone Tag Transcription, attached as *Exhibit C* to this motion; Santiago Decl. ¶¶4-6; Mulkey Decl. ¶9.

Ms. Santiago returned the phone call and spoke with Ms. Mulkey. Ms Mulkey indicated that her clients, the Palacios, an elderly couple, had received several pieces of correspondence from Heritage Pacific Financial regarding where the Palacios should send the money owed to HPF under the settlement agreement entered into between the Palacios and Heritage Pacific Financial. She offered to send Ms. Meyer Santiago copies of the correspondence, and acknowledged that the Palacios had paid funds to HPF as a result of the letters. *See* Santiago Decl. ¶¶7-8; Mulkey Decl. ¶¶6-12.

Ms. Mulkey emailed Ms. Meyer Santiago copies of the documents received by Rudolfo Palacio, concerning the rights to payments which had been assigned to Mr. Montano by this Court. The email, attached as *Exhibit D*, contained three documents, true and correct copies of which are attached as *Exhibit E* to this memorandum. *See* Santiago Decl. ¶¶8-10. Ms. Mulkey's affidavit is submitted in conjunction with Defendant' motion, and states that she received these letters from the Palacios. *See* Mulkey Decl. ¶12.

These documents are as follows 1) a Servicing Transfer Notice, dated September 4, 2013. This notice informs Mr. Palacio that, effective September 20, 2013, the rights to servicing his loan would be held by Knightshead Trust. The letter directs Mr. Palacio to send his future payments to Knightshead Trust; 2) Invoice #77221, from Knightshead Trust, dated September 23, 2013, and showing that since July 16, 2013, Heritage Pacific Financial received a total of $835.00 from Mr. Palacio. The monies were received on August 31, 2013 and September 16, 2013; 3) a letter of assignment from Knightshead

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

Trust, dated September 10, 2013, telling Mr. Palacio that from September 20, 2013, his loan would be serviced by Knightshead Trust. *See* Exh. E.; Mulkey Decl. ¶12.

Lincoln Law has not received any monies turned over by Heritage Pacific which it received from settling debtors covered by the Order. *See* Santiago Decl. ¶11.

## B. Motion to Compel

On July 16, 2013, pursuant to FRCP 37(a)(5)(A), made relevant by Bankr. Rule 7037, Defendant moved the Court for an order compelling HPF to respond to the Rule 69 post-judgment discovery requests served by Defendant on HPF on March 20, 2013. The motion and notice were properly served on HPF by mail upon the headquarters' address, and on its attorney of record, Brad Mokri, via ECF. HPF did not respond or appear at the August 14, 2013 hearing. On September 13, 2013, the Court entered the Order compelling HPF's response within 14 days of the entry. *See Compel Order*, a true and correct copy of which is attached *as Exhibit F* to this Memorandum, at page 4.

HPF's response was due by September 27, 2013.

On October 1, 2013, the same Ben Ganter, manager of HPF, faxed HPF's responses to Defendant's counsel. He stated that he had sent his responses to his attorney, a Ms. Wendy Harris, in July and didn't know why she hadn't submitted them. *See HPF's Responses to Defendant Rule 69 Interrogatory Requests*, a true and accurate copy of which is attached as *Exhibit H* to this Memorandum, at page 1.

HPF's responses are not prepared by an attorney. HPF's responses and objections to the requests are not signed by an attorney. HPF's responses are not signed by Mr. Ganter. HPF's responses are not signed under oath or penalty of perjury. Mr. Ganter does not answer 10 out of the 25 questions in any meaningful way. He repeats one discovery

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

7

response three times.  He provides incomplete responses to Interrogatory Requests 5 and 9.

## C.  Perjury, Assignment and Interrogatory Responses

HPF also, through Mr. Ben Ganter, takes a contradictory position regarding ownership of the loans to the position presented and argued to the Court in summary judgment.

During the voluminous briefing on Defendant's motion for summary judgment, Defendant argued that Plaintiff Heritage Pacific Financial, LLC was not assigned the rights to litigate the fraud claims.  In support of Plaintiff's opposition to Defendant's motion for summary judgment, HPF offered the *Mortgage Loan Sales Agreement*, a true and correct copy of which is attached as *Exhibit F* to the Memorandum, and the Declaration of Ben Ganter, director of client relations. *See March 7, 2012 Declaration of Ben Ganter*, a true and accurate copy of which is attached to this Memorandum as *Exhibit I.*

In his declaration Mr. Ganter swears the following:

1. I am the Director of Client Relations for Heritage Pacific Financial, LLC d/b/a/ Heritage Pacific Financial . . . . I participate in the purchase of mortgage notes on the secondary market, on behalf of Plaintiff Heritage Pacific Financial.

. . .

8. A true and correct copy of the Promissory Note and Allonge is attached as Exhibit A and the original is in possession of Heritage Pacific Financial, LLC and maintained in its ordinary course of business.  Heritage's possession of the original promissory note and allonge is the result of the direct purchase from the predecessor-in-interest, not the result of mortgage papers being transferred as collateral to another transaction.

. . .

10. Heritage purchased the unpaid junior loan on the secondary mortgage market.  Heritage owns part of the overall whole loan, which was in the amount of $425,000.00. . . .

Case: 11-04008   Doc# 248   Filed: 10/21/13   Entered: 10/21/13 22:13:38   Page 8 of 23

11. After the purchase of the Defendant's junior loan and upon investigation, Heritage discovered that Defendant had made misrepresentations about his income and supplied the original lender with falsified documents to support his employment and income claims. . . .

12. <u>Heritage purchased the junior loan on the secondary mortgage market.</u> . . .

13. <u>Heritage is an active participant in the secondary mortgage market, buying junior liens in 80/20 mortgages.</u> Heritage buys pools of loans from around the United States, ranging in size from 200 to 45,000, comprised of both secured and unsecured notes. These loans are generally purchased from successor-in-interest of the original lender. Heritage then seeks to collect on the unpaid balances of the notes it purchased. Montano's loan was part of a larger pool of loans purchased by Heritage on the secondary mortgage market. Heritage bought Montano's junior loan, not knowing it was secured by fraud, and, by virtue of that purchase, became the assignee of the original lender and owner of all the rights associated with that note.

. . .

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct on this 7th day of March, in Plano, Texas.

*Exh. I*, pages 2-3 (emphasis added)

Mr. Ganter provided additional sworn testimony regarding HPF's purchase and ownership of the secondary loans. In his Declaration submitted in support of Plaintiff's Supplemental Brief Re: Substantial Justification, docket item 139-1, he swears "I have developed a sophisticated system for reviewing and verifying <u>loan files purchased by Heritage Pacific Financial, LLC.</u>" *See August 15, 2012 Declaration of Ben Ganter*, a true and accurate copy of which is attached as *Exhibit J* to the Memorandum.

In the hearing on Defendant's motion for summary judgment, Plaintiff adamantly maintained that it owned the loan and had the right to pursue the fraud claim. Under threat of compulsion, it produced the Mortgage Loan Sales Agreement to assert ownership. Based on this document, HPF argued that HPF owned the second loan, and that it was purchased from Promor Investments, who purchased it from Mountainview Capital

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

Mortgage Trust, who purchased it from WMC, the original lender. *See Transcript of Motion for Summary Judgment* at page 66 of original transcript, the relevant pages of which are attached as Exhibit K to the Memorandum, in which Ms. Hupe argues that

> we also have a declaration from the person with most knowledge of Heritage Pacific Financial that states that Heritage did purchase from Promar [sic]". Ms. Hupe goes on to state that "What Heritage has is what was passed from their transaction, . . . which we've provided as the loan document that was produced. . . . After the purchase, Heritage obtained the note, the loan application and the supporting document. Heritage then purchased from Promar the note and the loan file. . . . And in Ben Ganter's declaration in Paragraph 3, he states that Heritage purchased the note from Promar and then Heritage transferred the note to RP Financial and RP Financial transferred it back to Heritage. So the chain of custody has been identified which would support the notations actually on the loan documents.

*Id.* at page 67, line 6-page 68 line 2 (emphasis added).

Later, when the Court heard argument on assignability, HPF based their argument on two documents: 1) the Mortgage Loan Sales Agreement which indicates that Heritage Pacific Financial, represented by Ben Ganter, bought a parcel of loans including Mr. Montano's loan, and 2) Ben Ganter's declaration. HPF's counsel argued: "I know when [the loans bought by HPF are] transferred, and this is supported by the declaration of Ben Ganter as well, is that they do obtain all of the additional documents and they obtain the originals of the loan application, the promissory note." This, HPF argued, "transferred the right to the note, which is unpaid." *See Exh. K*, at pages 85; page 86, lines 15-19.

HPF's responses to Defendant's post-judgment discovery requests contradict this position.

Defendant's Interrogatory Request No. 5 asked HPF to "Identify each person against whom you obtained a judgment during the relevant time period, and state the amount of

the judgment." (A copy of the *Defendant's Rule 69 Post-Judgment Interrogatory Requests* is attached as *Exhibit G* to this Memorandum.) HPF responded by attaching a spreadsheet, and added the following explanation:

> While HPF was in the business of collecting debts, it does not retain ownership of the accounts it worked. Once a collection was received or a judgment was obtained the funds or the judgment was sent to the owner. <u>All judgments obtained have been transferred back to the original owner or transferred to a third-party at the direction of the original owner</u>. In a few rare instances, a judgment was assigned to a judgment collection company for further collection work and funds were then funneled back through HPF to the owner. HPF only received a 30% collection fee once funds were received if received at all.

HPF Response to Def. Interrogatory No. 5, *Exh. H* at page 3 (emphasis added).

Defendant's Interrogatory Request No. 20 asked HPF "Have you directly or indirectly transferred, conveyed or disposed of any cash, assets or other items of value with a cost or fair market value of $1,000 or more during the period of December 2010 to present." *Exh. G* at page 7.

HPF responded that "HPF is a third party collection agency and does not hold ownership rights to any property. <u>It was simply a collection vehicle with limited and temporary assignment of the accounts it worked</u>."(emphasis added) *Exh. H* at page 4.

Defendant's Interrogatory Request No. 23 asked HPF to "identify every loan made to you or was outstanding from you during the period in question, including but not limited to name of the lender, date of the loan, maturity dates, principal amount, rate of interest, collateral or security interest given by you, your purpose in borrowing funds, and date and amount of each repayment."

HPF responded that

> Heritage Pacific Financial opened a revolving line of credit with HP Debt Exchange in April of 2009 to cover costs associated with the litigation and

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

collection of accounts. The revolving line had a cap of five-million dollars and in return for the revolving line <u>Heritage Pacific Financial would make payment to HP Debt from its profits derived from collection fees (30%) on accounts it settled through voluntary collections and litigation for debt owners.</u> . . . <u>As of late 2012 Heritage Pacific Financial had defaulted on its revolving line in excess of one million dollars and HP Debt Exchange took action against the company's assets.</u> Aside from a few open cases collection rights on all judgments and uncollected accounts have been transferred back to their original owners.

*Exh. H*, page 4.

## III. <u>LEGAL ARGUMENT</u>

**A. <u>HPF and its directors/managers are in violation of the Assignment Order.</u>**

1. <u>The July 16, 2013 Order is in Effect and for the Benefit of Defendant.</u>

The Order was entered July 16, 2013. *See Exhibit A*, page 1. The order assigns all rights to payment of monies by Rudolf Palacio in favor of Heritage Pacific Financial, LLC to Jesus Montano. *Id*. pp. 2 and 5.

2. <u>The July 16, 2013 Order is Clear and Unambiguous</u>

The Order clearly orders HPF regarding three district actions: a) monies owed by settling debtors; b) monies received from settling debtors, and c) assignment of rights assigned by the Order.

a) As to rights to monies owed HPF by settling debtors, the Order states that

all rights, accounts, accounts receivables, rights to payment of money, and general intangibles owed and in favor of Heritage Pacific Financial due from the settling defendants in the adversary proceedings identified below are assigned to Jesus Montano until satisfaction of the judgment.

The Order then clearly identifies "PALACIO, Rudolf, defendant in *Heritage Pacific Financial, LLC v. Palacio*, Case no.8:11-AP01022, Bankr. S.D.California" as one of the settling debtors covered by the Order. *See* Exh. A at page 5, lines 16-17.

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

12

b)  As to settling debtor monies assigned but received erroneously by HPF from settling debtors including Mr. Palacio, the Order states that "any monies owed under these agreements that flow to Heritage Pacific Financial and its assignees are hereby assigned to Jesus Montano until the judgment has been satisfied." *Exh. A*, page 4, lines 16-18. The Order also directs that "any payment ordered under item C must be paid to Lincoln Law, LLP, 1525 Contra Costa Blvd., Pleasant Hill, CA 94523." *Id*. at page 8, lines 6-7. Heritage Pacific was on notice that any funds it received were wrongfully received and should be forwarded to Jesus Montano c/o Lincoln Law.

c)  As to the assignment of monies already assigned by this Order, the Order clearly orders that "Heritage Pacific Financial is enjoined from assigning or otherwise disposing of the right to payment assigned by this order, except upon a showing of need." *Exh. A*, page 9, lines 9-11.

3.  <u>The Palacio Documents clearly show HPF violated the July 16, 2013 Order.</u>

a)  HPF violated the Order by accepting funds from Mr. Palacio. *See Exh. E*, Invoice, showing $885 taken from Rudolf Palacio. This is corroborated by the Declaration of Ms. Mulkey. *See* Mulkey  Decl.¶13.

b)  HPF violated the order by not turning over the assigned monies to Lincoln Law. *See* Santiago Dec. ¶11.

c)  HPF violated the order by assigning the debt to Knightshead Trust on September 20, 2013. *See Exh. E*: Service Transfer Notice; Letter of Assignment.

Twenty one other settling debtors' loans are identified as having been transferred in the same way as Mr. Palacio i.e., they were "owned by Redwater Funding Group transferred to Blue Star Holding Company, LLC 11/2012 and then transferred to Knightshead Fund

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

Case: 11-04008   Doc# 248   Filed: 10/21/13   Entered: 10/21/13 22:13:38   Page 13 of 23

on 6/2013." *Exh. H*, pages 6-11. Defendant strongly suspects and the Court should infer that all the loans indicated this way were transferred September 20, 2013 in violation of the Assignment Order.

Based on the foregoing law and facts, the Court should find Heritage Pacific Financial, its owners, and managers in willful contempt of the Assignment Order.

**B.   HPF and its directors/managers are in violation of the Compel Order**

HPF was sent a copy of the Compel Order via the bankruptcy noticing center on September 15, 2013. HPF's attorney, Brad Mokri, was notified via ECF. *See Exh. F*, page 1.

The Compel Order required HPF to "respond fully to Defendant's Rule 69 discovery requests within 14 days of entry of this Order." *Exh. F, Compel Order*, page 4. The responses must be received by counsel "within 14 days of the entry of this Order." *Id.* Under Bankruptcy Rule 7037, a party must respond to interrogatory requests separately, fully, under oath and penalty of perjury.  Objections must be signed by an attorney.  The person preparing the responses must sign the responses. Bankr. R. Proc,. 7033.

HPF did not timely respond.  Its answers were due on September 27, 2013.  It faxed a partial response on October 1, 2013.  The answers were not signed by Ben Ganter.  The objections were not signed by an attorney. The answers were not prepared under oath. The answers did not respond to Interrogatory Requests 3, 5, 7, 9, 12, 16, 17, 18, 19 and 22 . The answers to HPF's response to Interrogatory No. 9 impermissibly narrowed the scope to only those settling debtors identified in the Assignment Order, many of which were Chapter 7 debtors. The answer to Request No. 5 is deficient in as much as Exhibit 1

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

attached by Ben Ganter does not contain the names of the settling debtors identified in the Assignment Order.

HPF's director, Ben Ganter, offers as an excuse for the inadequate responses that he "sent these discovery responses to my attorney Wendy Harris back in late July and have recently been made aware of their failure to deliver them to your office." *See Exh. H,* page 1. He asks forgiveness for "information style of the response but I am not an attorney and typically have counsel create a formal version for submission." *Id.*

Mr. Ganter's statement is utterly disengenious and indicative of bad faith and willfulness on the part of HPF. Lincoln Law has had no contact with Ms. Wendy Harris, Mr. Ganter's purported attorney. She has not entered an appearance. HPF is still represented by Brad Mokri in this matter, but he is directed by HPF/the Ganters not to appear at any hearings related to the collection on the judgment. *See Ben Ganter Letter* dated May 20, 2013, submitted as Exhibit F to Defendant's Motion to Compel Plaintiff's Response, docket item no. 230, and attached as *Exhibit L* to this Memorandum ("As you are aware, Mokri and Associates does not represent Heritage Pacific Financial, LLC (HPF) in post-judgment collections.") Now, when an attorney is necessary and exposes HPF and its directors to sanctions, Mr. Ganter pleads that he should be given leniency as he is not an attorney.

This situation is of the Ganters' own making. Defendant can only surmise that the directors of HPF believe this strategy will render Defendant and this Court unable to reach HPF in Plano, Texas in any meaningful way. The Court should find HPF and its directors in contempt of the Compel Order for failing to fully respond to the Defendant's Rule 60 post-judgment interrogatory requests.

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

15

## C. HPF and its managers engaged is bad faith litigation tactics, including committing perjury, to avoid liability for the Order awarding fees.

Mr. Ben Ganter, manager of HPF, has provided contradictory sworn testimony regarding HPF's ownership of the loans it litigated. HPF has taken contradictory stances regarding its role as a legitimate successor-in-interest to the original lenders, and simultaneously, simply a servicer of loans for original owners.

During the summary judgment motion, when ownership was crucial to preserve HPF's standing to litigate the fraud claim, Mr. Ganter swore repeatedly HPF had purchased the loan, owned the loan, and was capable of pursuing a fraud claim on the loan. When ownership becomes a liability, Mr. Ganter provides responses for the LLC that HPF never owned the loans, but was temporarily assigned them in order to collect and service them.

Either HPF bought the loans, or did not buy the loans.

If HPF did, in deed, buy the loans, then Mr. Ben Ganter's representations on behalf of HPF in its Responses No. 20 and 23, *see Exh. I*, that HPF only worked the loan in a limited capacity through collections, are lies to avoid liability of the LLC on the judgment.

If HPF's representation that it only ever was "simply a collection vehicle with limited and temporary assignment" is true, then Mr. Ganter's repeated declarations to the Court regarding HPF's ownership of the loan at issue are perjurious, and HPF's position during summary judgment is unsupported by facts. This position is unfounded, and the Court should sanction HPF, its attorneys, and Mr. Ben Ganter and Mr. Christopher Ganter immediately under its sanctioning powers and under Bankr. Rule 9011(c), if HPF, its attorney and directors and managers refuse to cure the false statements.

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

# IV. SANCTIONS

HPF's actions with regards to Mr. Palacio are brazen disregard of the Assignment Order. Defendant requests that the Court fashion a coercive remedy that will force HPF and its directors/manager into compliance with the Assignment Order and the Compel Order, will reverse the Palacio transfer, and any others transfers, undertaken in direct violation of the Order, and will compensate the Defendant for damages suffered as a result of HPF's contemptuous actions. Defendant also requests that the Court impose ongoing financial coercive sanctions until HPF and its managers are in compliance with the Assignment and Compel Orders.

## A. Fashioning An Appropriate Remedy

The purpose of a civil contempt is to coerce compliance with a court order, and a coercive civil contempt sanction may be conditioned upon continued non-compliance. See MOORE'S FEDERAL PRACTICE, at ¶37.51; *Koninklijke Philips Electronics v. KXD Technology, 539 F.3d 1039* (9th Cir. 2008). Federal courts have "broad equitable powers . . . to shape equitable remedies to the necessities of particular cases." *Hickey*, 1131 (quoting *SEC v. Wenke*, 622 F.2d 1363, 1369)(9th Cir. 1980)(emphasis in original); *see also EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2nd Cir. 2001)( "The Court has broad discretion to fashion a coercive remedy based on the nature of the harm and the probable effect of alternative sanctions.").

Here's what courts are doing around the country when it comes to contempt remedies: Contemnor pays the complainant's reasonable costs and expenses, including attorneys fees, incurred in connection with the contempt proceedings. *See United States v. Paccione*, 975 F.Supp.537, 546 (S.D. N.Y 1997). Contemnor pays actual damages

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

17

suffered by complainant as a result of the contempt, including storage costs, attorneys fees, and lost royalties. *See Koninklijke Philips Electronics v. KXD Technology,* 539 F.3d 1039 (9th Cir. 2008). The court holds the corporation, trust, trustee and attorney in contempt of court order which froze assets of corporation and required accounting of corporate assets. *See SEC v. Current Financial Services, Inc.,* 798 F. Supp. 802 (D.D.C. 1992).Agents of contemnor company incarcerated until payment of the purge amount. *In re Spanish River Plaza Company, LTD,* 155 B.R. 249 (Bankr. S.D. Fla. 1993). In other words, a court has wide discretion to fashion a sanction that will coerce compliance. The only requirement is that the proper sanction will be "reasonable in relation to the facts." *EEOC v. Local 28, Sheet Metal Workers,* 247 F.3d 333, 336 (2nd Cir. 2001).

<u>These are the facts</u>: HPF's director, Ben Ganter vowed to Defendant's attorney not to pay one cent of the judgment. HPF has not voluntarily paid one cent toward the January 25, 2013 award of fees, or the September 25, 2013 award of fees. Any monies received by Defendant have been through the Assignment Order. The court assigned the funds owed HPF from 48 settling debtors. Not only has Mr. Ganter kept his promise not to pay, he has taken actions in direct violation of the Assignment Order. The facts clearly show that that even though HPF knew that the funds owed it under Mr. Palacio's loan were assigned to Mr. Montano, HPF and its managers assigned those funds to another entity—that is not registered with the state of Texas. *See* Santiago Decl.¶12. And it took monies directly from debtor's checking accounts, and failed to stop the automatic payments. *See* Mulkey Decl. ¶12.

The facts also show that HPF, through its directors Ben and Christopher Ganter, have engineered a situation in which HPF is not represented by attorneys in post-judgment

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

18

collection efforts, including responding to interrogatory requests. This has kept Defendant at arm's length in the collection process, and has forced Defendant to resort to the Court time and time again to compel HPF's participation in the post-judgment collection process. Now, when HPF's compelled responses fall far short of the full response ordered by the Court in the Compel Order, HPF claims that its responses should be forgiven because its director is not an attorney.

The facts also show that HPF's managers and directors have engaged in bad-faith litigation tactics, including committing perjury, to avoid liability, and submitting sworn statements to the Court for which there is no factual support. If HPF, through Ben Ganter, lied regarding its status as "debt collection vehicle," its representations are sanctionable under FRCP 37. If HPF and its attorneys and managers represented to the Court that HPF purchased and owned the loans as a true successor-in-interest, and HPF's Responses to Defendant's Rule 60 Interrogatories are true, then HPF, its attorney and its managers should be sanctioned by the Court under its sanctioning power, and under Rule 11.

**B.  Sanctions Requested by Defendant**

In light of the foregoing legal standards, argument, and precedent, Defendant requests the following sanctions be issued against Heritage Pacific Financial, LLC, and its equitable owners, directors and shareholders.

1. Damages sustained by contemptuous behavior.

Defendant seeks damages in the amount of $835 retained by HPF from Rudolfo Palacio, and attorneys fees incurred in bringing this motion. *See Koninklijke Philips Electronics v. KXD Technology,* 539 F.3d 103, 1043 (9th Cir. 2008)(finding attorneys

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

19

fees, lost royalties and storage costs assessed by contempt order were "to compensate plaintiff for losses sustained.").

2. <u>Turn over of all the records for settlement agreements, including the settling debtors.</u>

Defendant requests the Court order HPF to turn over the loan files associated with the settling debtors. This is the only remedy that would effectively bring HPF into compliance with the Assignment Order and the Compel Order. *See, for example, In re Stockbridge Funding Corp.*, 158 B.R. 914 (S.D. N.Y 1993)(ordering turnover of company files relating to fraudulent corporate transactions).

HPF did not set up Knightshead Trust as a repository for Mr. Palacio's funds alone. There is a high probability that those debtors whose loans were transferred in the same manner as Mr. Palacio's have paid HPF funds, had their loans transferred in violation of the Assignment Order, and HPF has not turned over the monies received to Lincoln Law. *See Exh. H* showing 21 other settling debtors whose loans indicate the same transfers as Mr. Palacios.

Defendant has a right to the information in those files. Defendant would like to point out that he has already requested this information—seven months ago, in March, before the transfers were allegedly made. *See* Exh. G, Request No. 7, asking for each person, with whom HPF entered into a settlement agreement during the relevant time period. HPF responded that "no such information was readily available." *See Exh. H*, page 4. Under FRCP Rule 33 and 68, Just like in *Stockbridge Funding*, this Court should find that HPF has "no right not to turn over the files," *id*. at 916, and should order HPF to turn over all its records.

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

Case: 11-04008    Doc# 248    Filed: 10/21/13    Entered: 10/21/13 22:13:38    Page 20 of 23

3. Reversal of all assignments and transfers made after July 16, 2013..

Defendant requests that the Court order HPF to reverse all transfers and assignments made after July 16, 2013.

In *Oliner v. Kontrabecki (In re The Kontrabecki Group,LP)*, Judge Montali ordered Kontrabecki, CEO of the debtor company, who maintained exclusive control of the debtor company, to reverse shares transactions that he had authorized after the company filed for Chapter 11 protection. The court issued a temporary restraining order and preliminary injunction, the relevant part of which orders the CEO to complete a stock transfer of all the stocks he had issued after filing for bankruptcy. *Oliner*, at 514. When Kontrabecki failed to reverse the stock transfers, he was held in contempt. *Id*. at 517. After a series of hearings, the court issued a coercive contempt order directing the CEO to revest all assets in the bankruptcy estate within 15 days of the entry of the order. *Id.* at 518-19. Failure to meet the deadline exposed the CEO to escalating financial sanctions and incarceration. *Id.*

4. Finding Ben Ganter and Christopher Ganter in contempt of the Assignment Order.

Because they are the managers and directors of the corporate entity, the Court should hold Christopher and Ben Ganter, individually and separately, in contempt of the Assignment Order.

Corporate officers can be held in contempt:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Wilson v. United States*, 221 U.S. 361, 376, 31 S.Ct. 538 (1911). *See also Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Service Co*., 340 F.3d

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

373, (6th Cir. 2003)(quoting Judge Learned Hand in *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2nd Cir. 1930)("a person who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. This is well settled law.") The party need not be an owner, but need only have control over the corporate entity. The Ninth Circuit upheld a contempt order issued by the Northern District of California finding that the non-owner principal of brokerage in contempt of a disgorgement order. *See SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003)(finding a federal court authorized to restrain nonparty).

Christopher David Ganter is the CEO of Heritage Pacific Financial, LLC. *See Plaintiff's Responses, Exh. I*, ¶1. Ben Ganter is the person most knowledgeable, the director of client relations, and the person who answered the Interrogatories for HPF, the corporate entity. *See Exhibits I, J*, and *K*. Together, these individuals have directed the contemptuous actions taken by the corporate entity. They can and should be held in contempt.

5. <u>Fine accruing on ongoing basis in response to noncompliance.</u>

In addition, the Court should fine for each day that HPF is not in compliance with the contempt order. *See, for example*, *Ayres v. Walsh (In re East West Construction Company, Inc*,), 21 F.3d 1112 (9th Cir. 1994) upholding Bankr. N. D Cal's order imposing a $100 fine per day for each day the judgment debtor remained in violation of the bankruptcy court order requiring him to refund $2000 to the trustee.

WHEREFORE, Movant/Defendant Jesus Montano hereby moves the Court for an order finding Heritage Pacific Financial, and its directors Ben and Christopher Ganter in

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

22

contempt of the Assignment Order, and imposing sanctions on the contemptuous parties as described above.

WHEREFORE, Movant/Defendant Jesus Montano submits the Proposed Order to Show Cause with this memorandum, and requests the Court enter it, and require Heritage Pacific Financial, Ben Ganter and Christopher Ganter to appear and show cause why the Court should not find them in contempt.


DATED: 21st day of October, 2013       Respectfully Submitted

/s/Tessa Meyer Santiago

Tessa Meyer Santiago
LINCOLN LAW LLP
Attorneys for Defendant

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS**

23